390 So.2d 1281 (1980)
STATE of Louisiana
v.
Marco Anthony THUCOS.
No. 65499.
Supreme Court of Louisiana.
November 10, 1980.
Rehearing Denied December 15, 1980.
*1282 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., John R. Harrison, Asst. Dist. Atty., for plaintiff-appellee.
Leslie L. LaCroix, LaCroix & McKeithen, Monroe, for defendant-appellant.
CALOGERO, Justice.
Marco Anthony Thucos was charged by bill of indictment with the crime of aggravated rape in violation of R.S. 14:42. A plea of not guilty was entered and defendant was tried by a twelve person jury. A verdict of guilty as charged was returned by ten of the twelve jurors. The trial court thereafter sentenced defendant to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. We reverse defendant's conviction and remand the case to the district court for a new trial because inculpatory statements, made by defendant after he had requested an attorney, were improperly admitted at the trial.
The initial contact between the defendant and the complainant (whom we shall refer to as Ms. Smith for the purposes of this opinion) occurred on Saturday, November 25, 1978. Defendant contends that he was at the public library on that day, and that he saw Ms. Smith there. He stated that she was sitting in the library with a very short red dress on and that when he looked at her she smiled at him. As she started to leave, he went outside to wait for her. He contends that he began talking with Ms. Smith and that he walked her half the way home. It was during this conversation that she told defendant that she had a car for sale.
Ms. Smith testified that, while she may remember seeing defendant at the library on that day, she definitely did not speak to him.
It is, however, not disputed by the parties that on November 27, 1978, defendant went to Ms. Smith's residence to discuss the purchase *1283 of her car. It was approximately 7:00 P.M. and Ms. Smith had already retired for the night. Ms. Smith came to the door upon hearing defendant's knocking. She looked through the window and inquired as to the nature of defendant's business. Defendant explained that he was there about the purchase of her car, but she refused either to allow the defendant to come in to discuss it or to go out herself and discuss the sale. However, it was suggested that defendant return in the morning. The following morning, defendant returned to Ms. Smith's house and Ms. Smith left with the defendant. They went to a Steak and Egg Restaurant to talk over the terms of the sale. A price of two hundred dollars ($200.00) was agreed upon and defendant returned Ms. Smith to her home, explaining that he would come back that evening with the money to close the deal. It is principally from this point on that defendant's and Ms. Smith's version of the facts differ.
Ms. Smith maintains that when defendant brought her home the morning of November 28th, he instructed her to find out what further procedures must be followed to transfer the title of the automobile. Ms. Smith busied herself with cleaning the car and forgot to inquire about the necessary procedures. When defendant returned that evening, Ms. Smith stated that he told her that they needed to go to a notary to transfer the title. Ms. Smith accompanied defendant to the Vagabond Inn. She testified that defendant had told her that his friend who was a notary resided there. After entering the motel room and seeing that it was a normal motel room unoccupied by a notary, Ms. Smith stated that she turned quickly toward the door only to find that defendant had entered the room behind her, locked the door and drawn a knife. Ms. Smith contends that the defendant thereafter, forced her, at knifepoint, to disrobe and then raped her.
Defendant, on the other hand, contends that when he returned to Ms. Smith's home on the evening of November 28th, he told her that he did not want to buy the car, but had used that as an excuse to get to know her. Thereafter, he testified that he asked Ms. Smith if she wanted to go out "for a good time" and that she readily agreed. They drove to the Vagabond Inn, went inside his room, and engaged in sex twice. Defendant consistently maintained that he did not force Ms. Smith to have sex with him and that, while he did own a knife, he never drew it or threatened Ms. Smith with it.
It was also not disputed that defendant and Ms. Smith thereafter dressed and went to Pizza Hut for dinner. While at Pizza Hut, defendant left the table to play the jukebox and go to the restroom. Ms. Smith made no attempt to signal the waitress, escape or anything of that nature. Defendant had five beers while at the restaurant and the waitress made several trips to the table but received no signals from Ms. Smith. During the evening, both stated that marriage was discussed. Defendant suggested that it was discussed with reciprocal interest. Although Ms. Smith stated that the discussion of marriage "thrilled" her, we surmise from the cold record that the remark was sarcastic rather than a candid comment. They left Pizza Hut and returned to the motel. At this point their stories again differ.
Ms. Smith contends that upon returning to the room she voluntarily disrobed because she did not want to take a chance on aggravating defendant, but admits that defendant did not ask her to undress and did not himself undress. Ms. Smith stated that defendant then passed out on the bed and she grabbed her coat and ran from the room to get help. It was at this time that she reported to the manager of the motel that she had been raped.
Defendant testified that the two returned to his motel room after he asked Ms. Smith if she wanted to go home and she responded that it did not matter. Upon returning to the room, defendant testified that they had sex again and then Ms. Smith requested that defendant take her home. He told her he would take her home in the morning and she got angry, stating that she was a Christian woman and that she could not let people *1284 know that she had stayed out all night. Defendant promised to take her home very early in the morning but explained that he was tired and would not take her home at that time. Defendant then fell asleep.
When the police arrived at the scene, defendant was still sleeping in his room. He was awakened, advised of the complaint against him and of his constitutional rights, and questioned by the officers. Defendant spoke with the officers and readily agreed to allow them to search his room. Women's clothing was found in the room and a pocket knife with a four inch blade was found. Defendant was arrested, charged with and convicted of aggravated rape. Defendant presents eleven assignments of error, each separately argued.

ASSIGNMENT OF ERROR NO. 3
Defendant argues in this assignment of error that the trial court erred in allowing into evidence certain statements made by the defendant, after he had requested an attorney.
Shortly after defendant was arrested on November 28, 1978, at about 12:00 midnight, he was taken to the stationhouse where he was interrogated. At that time defendant was again informed of his rights, including the right to have an attorney at the interrogation. He elected not to sign the waiver form and stated that he did not want to talk and that he would like to see an attorney. The officers allowed the defendant to make a phone call but testified that they did not know whether defendant reached an attorney or not. Thereafter defendant was brought to a cell.
Later that morning at approximately 9:00 A.M. defendant was taken from his cell, again brought to the interrogation room and interrogated, notwithstanding his earlier request for an attorney and the fact that no attorney had been provided him. Although defendant was again read his rights, he was never asked whether he had been able to contact an attorney of his own and no effort was made to have an attorney appointed for him. Defendant at this time, unaccompanied by counsel, signed the waiver form and made an oral inculpatory statement. When asked if he would make a recorded statement, defendant refused to do so. Defendant was then returned to his cell for another day. The next morning, November 30, 1978, defendant was once again taken from his cell and to the interrogation room where he was readvised of his rights. (No waiver form was presented to him on this occasion.) A second oral inculpatory statement was then made by defendant. The trial court ruled that both of the inculpatory statements made by defendant were admissible.
Before a confession or inculpatory statement can be admitted in evidence, it must be established that the accused who makes the statement during custodial interrogation was first advised of his Miranda rights and that the statement was made freely and voluntarily and not under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); R.S. 15:451. The Supreme Court in Miranda also stated: "Once warnings have been given, the subsequent procedure is clear.... If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." Although it has been recognized that an accused may later change his mind and waive the same rights which he earlier asserted, [State v. Manning, 380 So.2d 46 (La.1980), and State v. Dominick, 354 So.2d 1316 (La.1978)] once a defendant has invoked his constitutional right to remain silent or his right to counsel, the validity of any subsequent waiver depends upon the "scrupulous honoring" of that right by the police. Michigan v. Mosely, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); State v. Manning, supra. The state's burden here is a heavy one. State v. Mouton, 366 So.2d 1336 (La.1978); State v. Peevy, 321 So.2d 324 (La.1975). The courts indulge in every reasonable presumption against the waiver of fundamental constitutional rights. Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); Glasser v. U. S., 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); State v. Manning, supra.
*1285 The state here, relying on State v. Manning, supra, contends that the inculpatory statements made by defendant were properly admitted because defendant waived his rights during the second interrogation session. The state argues that bringing defendant back to the interrogation room did not violate defendant's rights because the officers only brought him back to inquire whether he had changed his mind and wanted to speak to them without an attorney.
We find Manning distinguishable from the case at bar and no support for the state's argument. In Manning, defendant was arrested at 1:40 a. m., given his Miranda rights and brought to the police station. At 2:25 a. m. Manning was again given his rights and at that time signed a waiver of rights form. At 5:03 a. m. while Manning was again being explained his rights, Manning then chose not to speak anymore and requested an attorney. The officers immediately ceased questioning Manning, indicating to him that his rights would be respected. They told defendant in no uncertain terms that they would not question him until he was furnished counsel. As the officers were leaving the room with the recording equipment, Manning voluntarily stated to the officers that he did not need an attorney before speaking with them further. This statement by Manning was unsolicited; it was not in response to any statement or questioning by the officers.
In the present case, defendant was informed of his rights at the scene and did not speak to the officers after he was arrested. When he arrived at the police station he was again informed of his rights and expressly declined to speak to the officers, rather, he requested an attorney. At this point defendant was brought to his cell. Later that morning, after earlier having informed the officers that he did not wish to speak to them until he had conferred with an attorney, defendant was nonetheless again brought to the interrogation room for questioning without retained or appointed counsel. Unlike Manning, defendant received no indication that his rights would be respected. On the contrary, it could only have appeared to defendant that he would be questioned regardless of his assertion of his rights, since his earlier refusal to make a statement and his request for an attorney had proven unavailing. Under the facts presented here, we cannot say that defendant's rights were "scrupulously honored" and that the state met its burden of proof. The officer's initiation of further questioning in this case, after defendant asserted his right to be silent and right to have counsel present during questioning, is fatal to the admissibility of the statements made by the defendant.
As provided above, it was stated in Miranda that where an accused is being interrogated and he asserts his right to remain silent and his right to counsel, the interrogation must cease until his attorney is present. While it is true that the accused may waive his rights subsequent to asserting them, as was done in Manning, the state has not met its burden of proving that the waiver was voluntary where, as here, interrogation was again commenced the very morning after defendant asserted his rights and notwithstanding defendant's request for an attorney. The same principles which cause us to exclude the November 29th statements apply to the November 30th statements where defendant was interrogated for the second time after he requested an attorney without one being appointed or present.
In view of our finding that the statements made by defendant on the morning of November 29, 1978 and November 30, 1978 were erroneously admitted in evidence at his trial, we conclude that defendant's conviction must be reversed.
As we stated recently in State v. Gibson, 391 So.2d 421 (La.1980), the test for determining whether a conviction for a crime should stand when a state has failed to accord federal constitutionally guaranteed rights is, as held in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), "`whether there is a reasonable possibility that the evidence complained of *1286 might have contributed to the conviction' and that `the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt.'" Under neither strand of this test can we conclude that the admission of the statements made by the defendant at the two interrogations in question was harmless.
The essence of the statements made by the defendant at the two interrogation sessions in question is as follows. Defendant admitted to the officers that he did have sexual intercourse with Ms. Smith, but without force. Defendant also stated that although Ms. Smith went to his hotel room willingly, she did not know she was going for sexual intercourse. Defendant further told the officers, when asked about his sexual preferences and habits, that he especially liked blonds and that it was his dream to come to this country and marry a blue-eyed blond. He also told them that he had to have sex at least four times a week and that he "masturbated quite a bit."
The case was apparently very close in the minds of the jury. The guilty verdict was returned by only ten of the twelve jurors after deliberating for about ten hours. We are simply unable to determine what persuaded the jurors one way or the other. In view of the foregoing, and the damage to defendant's character caused by the nature of the statements, we simply cannot hold that the admission of the above statements made by the defendant was harmless beyond a reasonable doubt. Rather, we find that there is more than a "reasonable possibility that the evidence complained of might have contributed to the conviction."
Because we find that the inculpatory statements made by the defendant were erroneously admitted, and that this admission was harmful to defendant, we hold that his conviction must be reversed and the case remanded to the district court for a new trial. We will therefore only address the remaining assignments of error which will be pertinent to the new trial.

ASSIGNMENTS OF ERROR NOS. 1 AND 2
By these assignments of error, defendant contends that the trial court erred in allowing the introduction of evidence seized as the result of an illegal search and seizure.
When the officers responded to the rape complaint by going to the Vagabond Inn, they first heard the victim relate the details of the crime including the fact that her assailant had threatened her with a knife. She further informed the officers that defendant was asleep in room 639. Room 639 was registered to the defendant in his own name. The officers knocked on the door to room 639 awakening defendant. Defendant opened the door and the officers questioned him about the complaint. The officers asked defendant if they could search the room and he consented. A knife matching the description given by the victim was found wedged between the mattress and the box springs and some items of women's clothing were found. Both were seized.
No motion to suppress was filed by the defense nor was any objection made to the introduction of the knife into evidence. While this precludes defendant from asserting his suppression claim on this appeal, we address the issue here nonetheless because of the probability that it will arise again during the new trial.
Both the United States Constitution and the Louisiana Constitution prohibit unreasonable searches and seizures. Absent one of the narrow exceptions to the requirement of a search warrant, warrantless searches and seizures are unreasonable. Collidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Bouffanie, 364 So.2d 971, (La.1978). One such exception to the warrant requirement arises when the defendant consents to the search of the premises. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).
At trial, the state called Officer Deen, who testified that he asked defendant's permission to search the motel room twice and that both times defendant consented. Moreover, defendant testified that he gave the officers permission to search his *1287 room and that, upon their discovery of the hidden knife, he admitted that it was his. Thus the instant search falls within the consent exception to the warrant requirement and the seized items were properly admitted in evidence at the trial.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 6
By this assignment of error, defendant argues that the trial court erred in failing to furnish an interpreter during trial since he was unable to understand the testimony fully.
The record shows that no motion requesting the appointment of an interpreter was filed by the defense prior to or during the trial. However, upon our review of the record and as noted by the trial judge in his per curiam, defendant's testimony at trial reflects his unquestionable ability to speak and understand the English language. Moreover, the minutes indicate that on two separate occasions prior to trial, the court made independent determinations that defendant could read, write and speak the English language. On the record presently before us, there has been no showing that the trial court erred by not furnishing the defendant an interpreter during trial. This, however, does not preclude defendant's attempting to show that an interpreter is needed at the new trial.
This assignment lacks merit.
Defendant's other assignments of error are directed at certain rulings by the trial court during the hearing on the motion for a new trial based on newly discovered evidence.[1] Since we hold, based on assignment of error number three, that defendant's conviction must be vacated and the case remanded for a new trial, we pretermit consideration of these assignments.

Decree
For the foregoing reasons, defendant's conviction is reversed and sentence vacated, and the case is remanded to the district court for a new trial.
REVERSED.
DENNIS, J., concurs with reasons.
MARCUS, J., dissents and assigns reasons.
DENNIS, Justice, concurring.
I respectfully concur, being unsure that the rights denied defendant were not "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.... See, e. g., Payne v. State of Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (coerced confession); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (right to counsel); Tumey v. State of Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (impartial judge)." Chapman v. State of California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710 (1967).
MARCUS, Justice (dissenting).
Shortly after defendant was arrested (about midnight), he was taken to the stationhouse where he was interrogated after again being informed of his rights. At this time, defendant stated that he did not want to talk and that he would like to see an attorney. Thereafter, defendant was brought to his cell. The next morning (about 9:00 a. m.), after being again read his rights, defendant signed the waiver form and made an oral statement but refused to make a recorded statement. The next day, defendant was again advised of his rights; a second oral inculpatory statement was made by defendant.
I consider that defendant made these statements after a waiver of his rights to *1288 remain silent and to have an attorney present. Hence, the trial judge was correct in ruling the statements admissible in evidence. I respectfully dissent.
NOTES
[1] Essentially, these assignments of error raised by the defendant relate to the trial judge's refusal to allow defendant to introduce certain evidence at his hearing on his motion for a new trial. Defendant contended that he had evidence that the complainant was undergoing psychological treatment, was paranoid and had made five complaints of criminal conduct directed toward her since the crime. The trial judge ruled that this evidence was not admissible and it was this ruling that defendant assigned as error.