421 So.2d 200 (1982)
STATE of Louisiana
v.
Kevin Michael SHEA.
Nos. 81-KA-0377, 81-KA-0378.
Supreme Court of Louisiana.
January 25, 1982.
On Rehearing October 18, 1982.
*201 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., Sonia D. Peters, Dale G. Cox, Asst. Dist. Attys., for plaintiff-appellee.
Howard F. Fish, Jeanette G. Garrett, Shreveport, for defendant-appellant.
SWIFT, Justice Ad Hoc.[*]
Defendant, Kevin M. Shea, has appealed two armed robbery convictions in Caddo Parish, one of Tony Tuminello at his Phillips 66 service station on July 2, 1979, and the other of Delores C. Dick at the Quick Mart Grocery Store on June 29, 1979. The first appeal involves Shea's conviction by a unanimous jury after a trial. The other is a "Crosby type" appeal in connection with a guilty plea bargain.[1] The defendant was sentenced in the first instance to 17 years and in the other case to 5 years, both at *202 hard labor. The sentences were imposed to run consecutively, without benefit of parole, probation or suspension of sentence.

FACTS
Mr. Tuminello was robbed of cash and checks by two men after one had fired a pistol shot into the floor. When they left he immediately called the police and gave them descriptions of the robbers.
Three Shreveport police officers were having coffee at a restaurant approximately three blocks from Tuminello's filling station at the time and they were notified by radio of the armed robbery shortly thereafter. The report identified the robbers as two white males, one a blonde and the other with long dark hair, both wearing blue jeans, one with a plaid shirt and the other with a blue shirt. Leaving the restaurant a minute or so later, the officers saw two individuals who met this description walking on the sidewalk at a brisk pace. When they failed to stop on being ordered to do so and after one man made a motion with his hand as if to remove something from his waist or pocket, the police drew their weapons and apprehended the two suspects. One of these was the defendant, who had in his shirt pockets a wad of money and also some checks payable to Tuminello's business. The other, Justice M. Ratliff, had in his possession a revolver with five live shells and one spent cartridge. The two persons were taken to the police station and subsequently identified by Mr. Tuminello and by Ms. Dick in a six-man line-up.
Both suspects were advised of their Miranda rights at the scene when arrested and also at the police station. At the station Shea told the police he did not want to make any statements until he saw a lawyer and the interview was terminated at that point.
The next afternoon, July 3, 1979, just prior to Shea's transfer to the Caddo Parish prison, the detectives again approached Shea and asked him if he wanted to talk about the case. No inquiry was made as to whether he had hired a lawyer or if he was indigent. This accused was again informed of the Miranda rights and again he acknowledged this in writing. Thereafter, although he refused a recorded interview, Shea gave a brief oral statement to the detectives admitting that he and his companion had robbed the service station. He said that he pulled the gun and demanded money from Mr. Tuminello. The latter gave him money and checks. As he was unable to carry these and the gun at the same time, he gave the gun to his accomplice and they fled. Shea also admitted that he was involved in the other robbery.
This defendant testified at the trial that he had repeated his desire for a lawyer before making the inculpatory statement. However when the detectives told him they already knew everything and that it would be better for him to cooperate, he told them what happened. The police denied that Shea asked for counsel or was promised anything on this occasion.
Ratliff subsequently pleaded guilty to both offenses and was sentenced.

ASSIGNMENT OF ERROR NO. 1 (BOTH CASES)
The defendant first contends that the district court erred in denying his motion to suppress the inculpatory statement given on July 3, because it was obtained in violation of his rights under the 5th and 14th amendments of the United States Constitution, as set forth by the Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
In State v. Thucos, 390 So.2d 1281 (La. 1980) this court pointed out the necessity for "scrupulous honoring" of a defendant's assertion of his right to counsel, saying:
"Before a confession or inculpatory statement can be admitted in evidence, it must be established that the accused who makes the statement during custodial interrogation was first advised of his Miranda rights and that the statement was made freely and voluntarily and not under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966);

*203 R.S. 15:451. The Supreme Court in Miranda also stated: `Once warnings have been given, the subsequent procedure is clear.... If the individual states that he wants an attorney, the interrogation must cease until an attorney is present.' Although it has been recognized that an accused may later change his mind and waive the same rights which he earlier asserted, [State v. Manning, 380 So.2d 46 (La.1980), and State v. Dominick, 354 So.2d 1316 (La.1978)] once a defendant has invoked his constitutional right to remain silent or his right to counsel, the validity of any subsequent waiver depends upon the `scrupulous honoring' of that right by the police, Michigan v. Mosely, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); State v. Manning, supra. The state's burden here is a heavy one. State v. Mouton, 366 So.2d 1336 (La.1978); State v. Peevy, 321 So.2d 324 (La.1975). The courts indulge in every reasonable presumption against the waiver of fundamental constitutional rights. Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); Glasser v. U.S., 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); State v. Manning, supra."
More recently, in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the United States Supreme Court said:
"Second, although we have held that after initially being advised of his Miranda rights, the accused may himself validly waive his rights and respond to interrogation, see North Carolina v. Butler, supra, 441 U.S. [369], at 372-376, 99 S.Ct. [1755], at 1757-1759 [60 L.Ed.2d 286], the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." (Emphasis added.)
And after mentioning later cases dealing with the "undisputed right" under Miranda to remain silent and to be free of interrogation before consulting with a lawyer the court stated:
"We reconfirm these views and to lend them substance, emphasize that it is inconsistent with Miranda and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." (Emphasis added.)
In a concurring opinion Justices Powell and Rehnquist indicated an uncertainty as to whether this decision really prohibited the police from initiating an inquiry as to whether a suspect has changed his mind about talking to them without an attorney. However, it seems quite clear to us that the majority of that court has so ruled.
In the present case it is undisputed that the police did initiate such an inquiry on July 3, after having been clearly informed by the defendant on the previous evening that he would not make any statements without counsel. Consequently, there was a violation of the additional standard governing police interrogation of a suspect imposed by Edwards v. Arizona, supra.
The state alternatively contends that if the court erred in this respect the error was harmless because there is overwhelming evidence of the defendant's guilt in the record of the Tuminello robbery case.
In State v. Gibson, 391 So.2d 421 (La. 1980), this court adopted the harmless error rule applied in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), saying:
"It appears that the Chapman test, i.e., `whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and *204 that `the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt,' will assist this Court to fulfill both of the requirements of state law.
From the record it seems quite possible that the jury could have convicted this defendant of the Tuminello robbery without consideration of the inculpatory statement in question. However, for reasons hereinafter set forth it is unnecessary for us to decide whether or not this error was harmless beyond a reasonable doubt.
We note that Edwards was rendered on May 18, 1981. Prior thereto, of course, law enforcement authorities were unaware of any prohibition against an officer asking a suspect, who had been warned of his Miranda rights and refused to give any information without counsel, whether he had changed his mind and was then willing to be interrogated without a lawyer. In this case Shea's inculpatory statement was obtained, his motion to suppress was tried and denied, he was tried and found guilty by a jury in one case, pled guilty in the other and he was sentenced for both offenses, all before the decision in Edwards was announced. Therefore, we are presented with the question of whether or not the rule of that case is to be applied retroactively.
The United States Supreme Court does not mention this subject in its decision. However, it has directed that Escobedo[2] and Miranda, both of which introduced new standards governing police interrogation as safeguards against the use of unreliable inculpatory statements, are not to be applied retroactively. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), rehearing denied, 385 U.S. 890, 87 S.Ct. 12, 17 L.Ed.2d 121. In Johnson the court decided that such newly instituted standards did not "enhance the reliability of the fact-finding process" to the extent that inculpatory statements previously obtained without their application should be excluded from evidence when the statements were found reliable under the prior tests of voluntariness. We see no sound reason why this new standard for police interrogation imposed by Edwards in regard to obtaining a suspect's statement without counsel should or will be treated differently.
This court has taken the same position with respect to retroactive application of the Dino[3] rule, excluding statements given by minors without consultation with an attorney, parent or adult. State v. Collum, 365 So.2d 1272 (La.1978), U.S. cert. den. 444 U.S. 882, 100 S.Ct. 171, 62 L.Ed.2d 111 (1979); State v. Kent, 391 So.2d 429 (La. 1981).
In the present case the trial judge determined that defendant Shea's oral statement was given freely and voluntarily after he was fully advised of his Miranda rights. We agree with the court's conclusion that it was admissible under the standards existing when it was taken and also when the matter was tried. We also find that the defendant voluntarily and intelligently waived the right to counsel and his privilege against self-incrimination before making the inculpatory statement. As this occurred before the decision in Edwards was rendered and we are convinced the United States Supreme Court will pronounce that decision is not retroactive, we so hold in this case.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2 (BOTH CASES)
The defendant contends the trial court erred in denying his motions to suppress evidence and the confession obtained as a result of the arrest by the police shortly after the Tuminello robbery. He argues that the officers did not have reasonable grounds to make this investigatory stop and search of the defendants under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d *205 889 (1968), and Article 215.1 of the Louisiana Code of Criminal Procedure.
Article 215.1 authorizes a police officer to stop a person in a public place for questioning when he reasonably suspects that person is committing, has committed or is about to commit a criminal offense. Reasonable cause for an investigatory stop or detention is something less than probable cause, which must exist for a police officer to arrest without a warrant for an offense committed outside his presence. La.C.Cr.P. Art. 213(3). However, the detaining officer making such stop must have articulable knowledge of particular facts sufficient reasonably to suspect the detained person of criminal activity. State v. Edsall, 385 So.2d 207 (La.1980).
Under the circumstances of this case we are convinced the police officers not only had reasonable cause for an investigatory stop but also had probable cause to arrest the defendant and his accomplice without a warrant. These two persons were in the immediate vicinity of the robbery within minutes after it occurred. They fitted the descriptions of the robbers broadcast on the police radio. They were heading away from the scene of the crime at a brisk pace. Instead of initially stopping as ordered, both suspects accelerated their paces and one of them reached toward his pocket as if to produce a weapon. Under somewhat similar facts this court upheld a stop, search and arrest in State v. Jackson, 337 So.2d 508 (La.1976). Also see State v. Kenner, 384 So.2d 413 (La.1980).
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 3 (BOTH CASES)
This assignment is directed at the denial of defendant's motion to suppress out-of-court identification. Since it was neither argued nor briefed by the defendant, it should be considered as abandoned. State v. Kenner, supra. Nevertheless, we have reviewed the transcript of the pre-trial hearing of this motion and conclude that the physical line-up was properly conducted. It was not suggestive, conducive to a mistaken identification or tainted in any manner as would violate due process of law.
This assignment has no merit.

ASSIGNMENT OF ERROR NO. 4 (81-KA-0377)
In this assignment the defense contends that the trial court erred in denying its challenge for cause of prospective juror Nathaniel Willis on the grounds that the voir dire examination disclosed he was not impartial and would not accept the law as given by the court. La.C.Cr.P. Art. 797 (2 and 4).
Initially, while he recognized the presumption of innocence and the state's burden to prove guilt beyond a reasonable doubt, the juror indicated that he would expect the defendant to produce some evidence on his own behalf in order to find him not guilty. However, upon being further instructed by the trial judge in this respect and in response to additional questions, Mr. Willis said that "it would be kinda hard" but he could and would apply the law according to the court's instructions.
We believe the juror's initial answers in this instance were brought about more from a lack of understanding of the law than bias. From our review of the entire voir dire examination we are convinced of the juror's ability and willingness to decide the case impartially according to the law and evidence. We therefore conclude that the trial judge did not abuse the broad discretion vested in him in ruling on this challenge for cause. State v. Sheppard, 350 So.2d 615, 638 (La.1977); State v. Sonnier, 379 So.2d 1336, 1352 (La.1980); State v. Bates, 397 So.2d 1331, 1333 (La.1981).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5 (81-KA-0377)
This assignment involves the trial court's denial of defendant's motion for a mistrial on the ground that the prosecutor made a comment during the voir dire examination which referred to the possibility that the defendant would not take the stand and testify in his own defense. La.C. *206 Cr.P. Art. 770. The remark was contained in the following question:
"Miss Peters: The fact that the defendant doesn't have to do anything in his defense, but if the defendant elects to take the stand then that would be his right. Would you, Mrs. Hutchison, could you judge his credibility like any other witness?"
A similar argument was made in State v. Kenner, 336 So.2d 824, 828 (La.1976). It was rejected because of the defendant's failure to object or move for a mistrial at the time. However, this court went on to say:
"In any event, the remarks were not a comment on the failure of defendant to take the stand, but only a statement that defendant might or might not present evidence. It has been held by this court that a prosecutor's statement that `the evidence ... was uncontradicted and uncontroverted' was not an impermissible comment on the accused's failure to take the stand. State v. Singleton, 321 So.2d 509 (La.1975). Hence, we do not find that the prosecutor's remarks adversely affected defendant's due process rights in any way."
We reach the same conclusion in this instance. We do not consider the portion of the question objected to as a comment on the failure of the defendant to take the stand. Instead, the prosecutor merely mentioned the defendant's constitutional privilege not to do so and then directed a legitimate inquiry toward the weight to be accorded his statements if he should choose to testify.
This assignment is without substance.

ASSIGNMENT OF ERROR NO. 6 (81-KA-0377)
The defendant argues that the trial court erred in curtailing cross-examination of Detective John Snell, thereby denying him the opportunity to attack the credibility of this state witness by showing his bias.
The defendant's counsel attempted to ask the detective if taking statements helps the state in getting convictions. The state objected on the ground that the question called for an opinion or a conclusion and it was sustained. We agree with the trial court's ruling that the question called for an impermissible impression or opinion of a witness not shown to have special knowledge in that field. La.R.S. 15:463 and 464. Furthermore, we are unable to see how the defendant could have been prejudiced or harmed by such ruling.
This assignment has no merit.

ASSIGNMENTS OF ERROR NOS. 7, 8 AND 9 (81-KA-0377)
Since these assignments of error were neither argued nor briefed by the defendant, they will be considered abandoned. State v. Kenner, supra.

ASSIGNMENT OF ERROR NO. 10 (81-KA-0377) & ASSIGNMENT OF ERROR NO. 4 (81-KA-0378)
Lastly, defendant Shea contends that his sentences are excessive. His principal complaint seems to be directed at the disparity between his consecutive sentences of 17 and five years and those of his accomplice Ratliff of two concurrent seven and one-half years sentences imposed pursuant to guilty pleas for the same robberies. Such comparison alone is not sufficient to establish an unconstitutional excessive sentence. State v. Bonanno, 373 So.2d 1284, 1294 (La.1979).
Ratliff's background is not in the record before us. However, we note that at the time of these offenses Shea was on probation for a felony theft convicted in Texas. He was the one who held the revolver and discharged it in the proximity of the victim Tuminello.
Before the 17 year sentence was imposed the trial judge ordered a pre-sentence investigation and permitted the defense to review the report. A pre-sentence hearing was held, after which the judge stated for the record in detail the considerations which he took into account and the factual bases for imposing sentence under the guidelines of La.C.Cr.P. Art. 894.1.
Under the circumstances and as armed robbery is one of the most serious crimes in *207 Louisiana, for which the Legislature has provided a minimum sentence of five years and a maximum of 99 years, without benefit of parole, probation or suspension of sentence, it is quite clear to us that the trial judge did not abuse his wide discretion in sentencing this defendant to serve 17 years at hard labor for the Tuminello robbery.
The defendant also contends that the five year sentence imposed in the other case is excessive inasmuch as the trial judge ordered that it be served consecutive to his 17 year sentence. He argues that the second sentence should have been made to run concurrently under La.C.Cr.P. Art. 883, because the two offenses constituted parts of a common scheme or plan. We disagree. These two robberies occurred four days apart and were separate crimes. But even if they were considered a single course of criminal conduct, Article 883 is not phrased in mandatory terms. More important, the five year sentence in the Quick Mart robbery case was imposed pursuant to a plea bargain to which the defendant, the district attorney and the judge had agreed. Consequently, he is precluded from complaining of excessiveness of that sentence before this court. State v. Curry, 400 So.2d 614 (La. 1981). Also, it appears that the only condition to the defendant's guilty plea was the reservation of his rights to appellate review of the trial court's ruling on his motion to suppress.
These assignments of error therefore lack merit.
For the foregoing reasons, the convictions and sentences are affirmed.
AFFIRMED.
CALOGERO, J., concurs and assigns reasons.
DENNIS, J., dissents with reasons.
CALOGERO, Justice, concurring.
The majority finds that Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), prohibits the police from initiating an inquiry as to whether a suspect, who earlier chose not to talk without an attorney, had changed his mind. I am not convinced that Edwards v. Arizona stands for that proposition. Edwards probably should be construed more narrowly than that in my opinion.
The majority determines that Edwards v. Arizona should be applied only prospectively. I am not convinced that this is correct. In my mind the Edwards opinion may well enhance the truth finding process, as opposed to simply creating a prophylactic deterrence of police activity.
For the reason first above stated I concur in the majority's affirmance of defendant's conviction and find in this case no need to decide the retroactive/prospective question. Defendant's statement of July 3, 1979, was not improperly admitted in evidence. Defendant neither asked for counsel nor "expressed his desire to deal with police only through counsel." Edwards v. Arizona, supra. An informed accused may waive his rights to silence and to counsel and respond to interrogation. North Carolina v. Butler, 441 U.S. 369 at 372-376, 99 S.Ct. 1755 at 1757-1759, 60 L.Ed.2d 286 (1979).
This case is different from our recent State v. West, 408 So.2d 1114 (La.1982), where defendant had been advised by his attorney to make no statement to police, the police officers were fully aware of that fact, and they took a statement from him nonetheless.

ON REHEARING
MARCUS, Justice.
We granted a rehearing in this case to reconsider our decision that the trial court correctly refused to suppress defendant's inculpatory statement.
In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation unless the accused is first advised of, and subsequently waives, his right to remain silent and right to the *208 presence of an attorney.[1] However, it was not clear from Miranda the standard to be applied in determining whether a person in custody has waived these rights.
Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), sought to answer Miranda. Mosley was arrested in connection with two robberies and was advised of his Miranda rights. Mosley subsequently informed the police that he did not wish to answer any questions about the robberies, whereupon the police ceased the interrogation. After an interval of approximately two hours, Mosley was taken by police to a different interrogation room and was again given his Miranda warnings. In addition, he signed a waiver of rights form. The police then told Mosley that he had been implicated in a homicide. Mosley then made a statement implicating himself in the homicide. The Court held:
[T]he admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his rights to cut off questioning was scrupulously honored. 423 U.S. at 104, 96 S.Ct. at 326. (Emphasis added.)
The Court, finding that Mosley's "right to cut off questioning" was fully respected, held that the admission in evidence of his incriminating statement did not violate the principles of Miranda. However, the Court observed in footnote 7 that:
The present case does not involve the procedures to be followed if the person in custody asks to consult with a lawyer, since Mosley made no such request at any time. Those procedures are detailed in the Miranda opinion.... (Emphasis added.)
The Court gave no reasons for distinguishing between the right to remain silent and the right to counsel. Thus, Mosley did not resolve the issue of whether the police could resume questioning of an accused following his invocation of the right to counsel.
Without an express statement of law on this issue, lower federal courts reached varied results. It appears that a majority of the courts did not make a distinction between the right to counsel and the right to remain silent. In so doing, the courts either used the "scrupulously honor" test[2] of Mosley or the "knowing and intelligent waiver" test[3] as dictated in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).[4] A minority of the courts[5] applied a per se rule against further police interrogation once the accused invoked his right to counsel.
This court, when confronted with the issue, that is, whether the police can resume questioning of an accused following his invocation of the right to counsel, seems to have adopted the "scrupulously honor" *209 test. State v. Thucos, 390 So.2d 1281 (La. 1980); State v. Manning, 380 So.2d 46 (La. 1980).
In Manning, defendant was arrested at 11:50 a.m., given his Miranda warnings and taken to the police station. At the station at 2:25 a.m., he signed a waiver of rights form. Later at 5:03 a.m., while the officer was asking Manning if he understood his Miranda rights, he stated that he wanted an attorney. Questioning immediately ceased and defendant was told that an attorney would be made available to him. As the officers began preparing to leave the interrogation room, defendant announced that he did not need an attorney and that he wanted to "clear the air." Manning then made a statement at 5:08 a.m. (about five minutes after he had invoked his right to counsel). Under these facts, we concluded that Manning's Miranda rights had not been violated.
In Thucos, defendant was arrested about midnight, advised of his Miranda rights, and taken to the stationhouse where he was again informed of his rights. He elected not to sign the waiver of rights form and stated that he did not want to talk and that he would like to see an attorney. The officers allowed defendant to make a call but testified that they did not know whether he reached an attorney or not. Thereafter, defendant was brought to his cell. Later that morning, at 9:00 a.m. (some nine hours after invocation of his right to counsel), defendant was brought to the interrogation room and interrogated. Thucos was again advised of his Miranda rights, signed a waiver of rights form, and made an oral inculpatory statement. Defendant was then returned to his cell. The next morning, he was once again taken from his cell to the interrogation room where he was advised of his rights. A second inculpatory statement was then made by defendant. Under these facts, we concluded that Thucos' rights had not been "scrupulously honored" and thus his statements were inadmissible. In distinguishing Manning, we stated:
The officer's initiation of further questioning in this case, after defendant had asserted his right to be silent and right to have counsel present during questioning, is fatal to the admissibility of the statements made by the defendant.
Whether an accused's rights are "scrupulously honored" should depend on the particular facts of each case. Stated another way, it depends on the totality of the circumstances. The fact that the officer initiates further questioning after the accused has invoked his right to counsel should be only one of the factors considered in determining whether his right to counsel has been "scrupulously honored." Other factors, such as the time delay between the original request and subsequent interrogation, whether Miranda warnings were given before each separate interrogation, whether waiver of rights forms were signed, and whether or not pressures were asserted on the accused by the police between the time he invoked his right to counsel and the subsequent interrogation, should be considered in making this determination. In Thucos, we most probably placed too much emphasis on the officer's initiation of further questioning in reaching our conclusion.[6]
In the instant case, Shea was arrested on the afternoon of July 2, 1979, and was fully advised of his Miranda rights. He was taken immediately to the police station where he was again advised of his rights. He also signed a waiver of rights form. Shea told the detectives (Snell and Smith) that he did not want to talk about the case until he had seen an attorney. The interview was immediately terminated. After an interval of some twenty-four hours, Snell returned and told Shea that he was about to be transferred. Snell asked Shea if he wanted to talk about the case. *210 Snell readvised Shea of his Miranda rights and defendant again signed a waiver of rights form. Shea then made a statement about his involvement in the robberies. Under the totality of the circumstances, we consider that Shea's right to counsel was "scrupulously honored." Hence, his inculpatory statement is admissible in evidence.
On May 18, 1981, Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), was decided. Edwards held that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. The Court further held that an accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police.
In the instant case, Shea invoked his right to counsel. Counsel was never made available to him nor did Shea initiate further communication with the police. To the contrary, the police re-initiated further conversations with him. Hence, under Edwards, the resumption of interrogation was not a product of a voluntary waiver and therefore the statement would be inadmissible.
However, Shea's statement was made on July 3, 1979, some ten months prior to the Edwards decision (May 18, 1981). The issue then is whether Edwards should be given retroactive effect.[7] We think not.
In United States v. Johnson, ___ U.S. ___, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), the Supreme Court stated:
Where the Court has expressly declared a rule of criminal procedure to be a "clear break with the past," it almost invariably has gone on to find such a newly-minted principle non-retroactive.
The Edwards Court, upon announcing its new ruling, stated, "We now hold ..." (emphasis added), which indicates that the Court felt that this holding was breaking new ground in the area of police procedure. The ruling was unanticipated.[8] Law enforcement authorities had relied on the old standards. In the instant case, the police did not know that once Shea requested counsel, further interrogation must cease until counsel had been made available to him, unless he (Shea) initiated further communication himself. The rule, therefore, as pronounced in Edwards is a "clear break with the past" and thus is non-retroactive.
In sum, the trial court correctly refused to suppress defendant's inculpatory statement.

DECREE
For the reasons assigned, our original opinion is reinstated.
DIXON, C.J., dissents.
CALOGERO, J., dissents and assigns reasons.
CALOGERO, Justice, dissenting.
I dissent from the majority opinion. In State v. Thucos, 390 So.2d 1281 (La.1980) *211 this Court held that inculpatory statements made by the defendant had to be suppressed where defendant had asserted his right to consult with an attorney but was nevertheless again questioned by police officers before he had an opportunity to do so. Under those circumstances, we found that the state had not met its burden of proving that the defendant's assertion of his right to an attorney had been "scrupulously honored." The instant case is indistinguishable from Thucos. Accordingly, the inculpatory statements made by this defendant pursuant to questioning initiated by the police officers after defendant had asserted his Miranda rights and requested an opportunity to consult with an attorney should likewise have been suppressed.
The majority opinion correctly states that the United States Supreme Court held, in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation unless the accused is first advised of, and subsequently waives, his right to remain silent and his right to the presence of an attorney. However, the majority falls into error when it finds that Miranda did not make clear, under the circumstances involved in this case, the standard to be applied in determining whether a person in custody waived these rights.
Miranda might not have made clear the standard to be applied in a situation where the accused merely chooses to remain silent (as opposed to asserting his right to consult an attorney). Michigan v. Mosely, 423 U.S. 96, 96 S.Ct., 321, 46 L.Ed.2d 313 (1975). However, on the question of what procedure should be utilized where the accused asserts his right to counsel, the Court in Miranda specifically stated:
Once warnings have been given, the subsequent procedure is clear .... If the individual states that he wants an attorney, the interrogation must cease until an attorney is present.
I fail to see what the majority finds unclear about this standard as it relates to this case. In fact, fully aware of these expressions by the high court, this Court held, in State v. Thucos, supra, that where the defendant had requested to see an attorney before answering questions, and the officers had again initiated questioning the following day without the defendant's having consulted with an attorney in the interim, the state had not met its burden of proving that the defendant's rights had been "scrupulously honored." We found the Thucos case to be distinguishable from our earlier decision in State v. Manning, 380 So.2d 46 (La.1980), where it was found that the defendant's rights had been "scrupulously honored" because the defendant was the one to initiate communications with the officers after previously asserting his rights.
Yet the majority finds that Thucos is not dispositive of this case because other factors should be considered (other than that the defendant asserted his right to counsel and was nevertheless again questioned by the officers) in determining whether a defendant's rights were scrupulously honored, and because "we most probably placed too much emphasis on the officer's initiation of further questioning in reaching our conclusion" in Thucos. I find it difficult to understand how the majority can conclude that our emphasis might have been misplaced in Thucos, since, not six months later, the United States Supreme Court in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) came down with the exact same result, likewise placing its emphasis on the defendant's assertion of his right to counsel coupled with the initiation by the officers of further questioning. The Court in Edwards held:
[A]lthough we have held after initially being advised of his Miranda rights, the accused may himself validly waive his rights and respond to interrogation, see North Carolina v. Butler, supra, [441 U.S. 369], at 372-376, 99 S.Ct. 1755, [at 1757-1759], 60 L.Ed.2d 286, the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to *212 have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police. (Emphasis added.)
Perhaps the majority feels that the United States Supreme Court has misplaced its emphasis also. However, that is not a question for our determination. Therefore, whether Edwards is retroactive or not, the majority falls into serious error in cutting back on the standard set out in Thucos, where the identical position has since been taken by the United States Supreme Court.
Finally, the majority finds that Edwards should not be given retroactive effect because it created a new rule. While it is arguable whether Edwards created a "new" rule at all (to be discussed further below) in view of its reliance on Miranda, it certainly is clear that it did not create a "new" rule in Louisiana since we had previously rendered the Thucos decision on the same issue with the same result.
Furthermore, I believe that Edwards v. Arizona, supra, should be given retroactive effect. Although the United States Supreme Court has not specifically addressed the issue of prospective/retrospective application of Edwards, its actions clearly indicate that Edwards is not to be applied prospectively only. One week after handing down Edwards, the United States Supreme Court granted certiorari in six cases which involved the same issue. In each case, the petitioner was a defendant whose statement had been ruled admissible by the trial court and whose conviction had been affirmed on appeal. Blakney v. Montana, 451 U.S. 1013, 101 S.Ct. 2999, 69 L.Ed.2d 384, (1981);[1]White v. Finkbeiner, 451 U.S. 1013, 101 S.Ct. 3000, 69 L.Ed.2d 385, (1981);[2]Leuschner v. Maryland, 451 U.S. 1014, 101 S.Ct. 3001, 69 L.Ed.2d 385, (1981);[3]Monroe v. Idaho, 451 U.S. 1014, 101 S.Ct. 3001, 69 L.Ed.2d 385, (1981);[4]Wantland v. Maryland, 451 U.S. 1014, 101 S.Ct. 3001, 69 L.Ed.2d 386 (1981);[5] and James v. Illinois, 451 U.S. 1014, 101 S.Ct. 3001, 69 L.Ed.2d 386 (1981).[6] One month later the Court followed this same procedure in Williams v. Ohio, 452 U.S. 935, 101 S.Ct. 3073, 69 L.Ed.2d 949 (1981).[7] The Court vacated the judgments and remanded the cases to the courts below for "further consideration in light of Edwards v. Arizona." This procedure is contrary to that adopted by the Court following its decision in Miranda. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), decided one week after Miranda, directed that Miranda would apply only to cases in which the trial began after the date of the Miranda decision.
The belief that Edwards is to be applied to this case is further supported by People v. Paintman, 412 Mich. 518, 315 N.W.2d 418 (1982), in which the Michigan Supreme Court, relying upon Edwards, ruled that Paintman's pre-Edwards statement was inadmissible. The state of Michigan sought certiorari. The United States Supreme Court denied the application. ___ U.S. ___, 102 S.Ct. 2280, 73 L.Ed.2d 1292 (1982). Accord: Connecticut v. Smith, 455 U.S. 945, 102 S.Ct. 1441, 71 L.Ed.2d 657 (1982).
Actually, the question whether to accord retroactive or prospective application to a decision of the United States Supreme *213 Court only arises when that Court announces a new rule. Johnson v. United States, ___ U.S. ___, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982); Brown v. Louisiana, 447 U.S. 323, 100 S.Ct. 2214, 65 L.Ed.2d 159 (1980); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 1601 (1965); Battie v. Estelle, 655 F.2d 692 (5th Cir.1981). In my view, Edwards announces no new rule regarding the admissibility of statements obtained by the police after a defendant has invoked his right to counsel. The United States Supreme Court in Edwards specifically stated that the use of Edwards' confession at trial "violated his rights under the Fifth and Fourteenth Amendments as construed in Miranda." 451 U.S. at 480, 101 S.Ct. at 1882 (emphasis supplied). Noting that Miranda required that once an accused asserted his right to counsel, "the interrogation must cease until an attorney is present," the Court briefly discussed cases after Miranda which applied the dictates of Miranda to the particular facts presented in those cases. The Court then concluded:
We reconfirm these views and to lend them substance, emphasize that it is inconsistent with Miranda and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel. 451 U.S. at 485, 101 S.Ct. at 1885.
Therefore, because I think Edwards v. Arizona, supra, should be applied retroactively, and in any event, State v. Thucos, supra, is dispositive of the issue, holding that questioning is not to be initiated by police once the defendant has asserted his right to counsel until counsel has been made available to him, I dissent from the majority opinion.
NOTES
[*] Judges E.L. Guidry, Jr. and G. William Swift, Jr. of the Court of Appeal, Third Circuit, and Judge Robert J. Klees of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices ad hoc, joined by Associate Justices Pascal F. Calogero, Jr., James L. Dennis, Jack C. Watson and Harry T. Lemraon.
[1] State v. Crosby, 338 So.2d 584 (La. 1976).
[2] Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 977 (1964).
[3] State in the Interest of Dino, 359 So.2d 586 (La.1978), U.S. cert, den., Louisiana v. Dino, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978).
[1] Specifically, the accused must be warned that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.
[2] See United States v. Rodriguez-Gastelum, 569 F.2d 482 (9th Cir.), cert. denied, 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978); United States v. Collins, 462 F.2d 792 (2d Cir.), cert. denied, 409 U.S. 988, 93 S.Ct. 343, 34 L.Ed.2d 254 (1972).
[3] See, e.g., United States v. Grant, 549 F.2d 942 (4th Cir.), cert. denied, 432 U.S. 908, 97 S.Ct. 2955, 53 L.Ed.2d 1081 (1977); Cobbs v. Robinson, 528 F.2d 1331 (2d Cir. 1975), cert. denied, 424 U.S. 947, 96 S.Ct. 1419, 47 L.Ed.2d 354 (1976).
[4] In Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the Supreme Court held:

A waiver is ordinarily an intentional relinquishment of a known right or privilege. The determination of whether there has been an intelligent waiver ... must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.
Accord, e.g., Fare v. Michael C., 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1978).
[5] E.g., United States v. Massey, 550 F.2d 300 (5th Cir. 1979); United States v. Clark, 499 F.2d 802 (4th Cir. 1972); United States v. Priest, 409 F.2d 491 (5th Cir. 1969).
[6] In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (discussed fully later in this opinion), initiation was made the crucial factor to be considered. However, at the time of the decision in Thucos, Edwards had not been decided and for reasons to be discussed later, we hold that Edwards is non-retroactive.
[7] Shortly after Edwards was decided, the Supreme Court granted certiorari in a number of cases which were apparently pending on direct review in that Court, vacated the judgments and remanded for further consideration in light of Edwards. This action does not mean that the Supreme Court will ultimately decide to give full retroactive effect to Edwards.
[8] "In the course of making that holding [Edwards], Justice White established a new prophylactic rule." The Supreme Court, 1980 Term, 95 Harv.L.Rev. 127 (1981-82) (emphasis added).

"The instant majority, by establishing the new per se rule, went beyond what was necessary to exclude the confession.... This new rule protects the suspect's choice to be free from interrogation until he consults with counsel.... The Court could have at least noted that its new rule was not the most faithful reading of Miranda." 33 U.Fla.L.Rev. 788, 797 (1981) (emphasis added).
"The Court instead seized upon the opportunity to announce a broad prophylactic rule in direct opposition to the previous trend toward limiting the scope of Miranda." 23 Ariz.L.Rev. 1391, 1400 (1981).
[1] 605 P.2d 1093 (Mont.1979).
[2] 611 F.2d 186 (7th Cir.1979).
[3] 45 Md.App. 323, 413 A.2d 227 (1980).
[4] 101 Idaho 251, 611 P.2d 1036 (1980).
[5] 413 A.2d 1376 (Ct.Spec.App.Md.1980).
[6] 82 Ill.App.3d 551, 37 Ill.Dec. 934, 402 N.E.2d 936 (1980).
[7] No cite below reported.