380 So.2d 46 (1980)
STATE of Louisiana
v.
Gerald MANNING.
No. 64309.
Supreme Court of Louisiana.
January 28, 1980.
*48 Ann Woolhandler, George M. Strickler, Jr., New Orleans, Paul Henry Kidd, A Law Corporation, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., John R. Harrison, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.[*]
Gerald Manning was indicted by the Ouachita Parish grand jury on October 20, 1977, for the aggravated rape of Vonda Harris, the first degree murder of Vonda Harris, and the aggravated rape of his neighbor, a sixty year old Monroe woman. The aggravated rape of the neighbor was severed from the case at bar and tried separately.[1] The jury here found him guilty of attempted aggravated rape and of second degree murder of the victim Vonda Harris. He was sentenced to twenty years imprisonment at hard labor without benefit of parole, probation or suspension of sentence for the rape offense, and life imprisonment at hard labor without benefit of parole, probation or suspension of sentence for the murder offense. He appeals the conviction on the grounds that his confession to the rape-murder of Vonda Harris was obtained in violation of this fifth amendment and Miranda rights and that the state withheld material evidence from him.
On February 21, 1977, a workman discovered the nude body of a young woman behind a vacant house in Monroe, Louisiana. The victim, Vonda Harris, had been raped and beaten to death.
Six months after the discovery of Vonda Harris' body, on August 9, 1977 at 1:41 a. m. the Monroe police received a complaint *49 from the sixty year old woman that she had been raped by a young man who lived next door to her. She identified the defendant Gerald Manning as the man who had raped her. Defendant was taken to the police station and questioned for several hours. At 4:59 a. m. defendant requested an attorney. At 5:08 a. m. defendant told the police that he didn't need an attorney and made an exculpatory statement concerning his neighbor's claim.
At 6:00 a. m. the police allowed Manning to return home but asked that he return to the station at 8:00 a. m. When he returned he took a lie detector test in which he admitted being at the neighbor's residence, but denied having had intercourse with her. At 10:00 a. m. defendant was again allowed to return home. Several hours later the police asked Manning to return to the police station for questioning. Shortly after the questioning began, Manning made an oral unrecorded confession that he had forced his neighbor to have sexual intercourse with him.
Defendant was then questioned about the Vonda Harris rape-murder. At 2:50 p. m. Manning made an oral recorded statement implicating himself and an accomplice, Morris "Buck" Perkins, in the Harris murder. At 3:31 p. m. defendant made an oral inculpatory statement concerning the neighbor's rape. The police ceased questioning Manning at 5:00 p. m. August 9th and resumed questioning about the Harris case the next morning at 8:15 a. m. At 10:35 a. m. on August 10, 1977 Manning made another oral recorded statement in which he admitted his participation in the murder of Vonda Harris.
We deal first with the confession issue. Defendant contends that his confessions should not have been admitted for the following reasons:
1) The confessions were obtained in violation of defendant's Miranda rights.
2) The confessions were not made freely and voluntarily.
3) The trial court failed to articulate the standard it used in ruling on the admissibility of the confessions.
The defense argues that the police obtained his confession by violating two rights protected by Miranda, the right to remain silent, and the right to counsel. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant contends that the police deprived him of both rights by giving him equivocal Miranda warnings and engaging in conduct which encouraged defendant to believe that he could not go home unless he gave a statement. The defense argues that the alleged violation of Manning's rights which occurred at 5:03 a. m. August 9, 1977 rendered all subsequent confessions by Manning unlawful and inadmissible.
At 1:41 a. m. on August 9, 1977 Officer Otwell of the Monroe Police Department was called to investigate a complaint by defendant's neighbor that she had been raped by a young man who had lived next door. After listening to her complaint and briefly questioning Manning, the officer gave defendant his Miranda warnings and took him to the police station.
At the station at 2:25 a. m. he signed a waiver of his constitutional rights. At 4:59 a. m. defendant began to make an oral recorded statement. When asked if he waived his constitutional rights, Manning answered "yes", but in the course of questioning the following exchange took place:
"Q: I need to get you to speak up?
A: Talk to you now? Am I gonna talk to you now?
Q: Well, that's what I am talking about. Do you want an attorney here or do you want to go ahead and tell us your side of it?
A: I want an attorney, you know.
Q: Well, I need to know. If you want an attorney right now let me know and we'll stop talking to you if you want an attorney?
A: Talking about I can get somebody to come here now?
Q: No, they will appoint you one later but I'll quit talking to you if you want an attorney?
A: I want an attorney.

*50 Q: O.K. Statement concluded at 5:03 A.M. 8-9-77."
Officer Zambie then told the defendant that they did not have an attorney available immediately and would have to question him at a later time when the presence of an attorney could be secured. The officers began preparing to leave the interrogation room when the defendant announced that he did not need an attorney and that he wanted to "clear the air." Manning then made a statement at 5:08 a. m. that he had not been in his neighbor's residence at the time of the rape. Later at 6:00 a. m., August 9th, the police took Manning home and asked him to return to the station at 8:00 a. m.
Defendant contends that in the foregoing incident the police rendered defendant's Miranda rights meaningless by telling him that he could have an attorney, but not until later, thereby creating the impression that he would not be allowed to go home unless he waived his right to remain silent and his right to counsel.
When a defendant invokes his constitutional right to silence, the validity of any subsequent waiver depends upon the "scrupulous honoring" of that right by the police. Michigan v. Mosley, 423 U.S. 96, 102, 96 S.Ct. 321, 325-326, 46 L.Ed.2d 313 (1975). The other constitutional right safeguarded by Miranda, the right to counsel, demands an equally strict standard of conduct by the police. In either instance, the police must cease interrogation when the defendant exercises these constitutional rights.[2]Miranda, supra. The accused is not precluded, however, from later changing his mind and waiving those same rights. State v. Dominick, 354 So.2d 1316 (La.1978). But the state's burden is a heavy one. State v. Mouton, 366 So.2d 1336 (La.1978); State v. Peevy, 321 So.2d 324 (La.1975). The courts indulge in every reasonable presumption against the waiver of fundamental constitutional rights. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Glasser v. United States, 315 U.S. 63, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 431 (1977).
In the present case defendant received three Miranda warnings before making the 5:08 a. m. exculpatory statement concerning the rape of his neighbor. Officer Otwell gave Manning a Miranda warning at 1:50 a. m. at Manning's house. At 2:25 a. m. defendant signed a written waiver of rights form. Later at 5:03 a. m. while an officer was asking Manning if he understood his Miranda rights, Manning exercised his rights by stating that he had nothing to say and that he wanted an attorney. After the officers ascertained defendant's intentions, they immediately ceased questioning Manning, indicating to him that his rights would be respected. They told the defendant that they could not provide him with a lawyer at that time (5:00 a. m.), but that he could have counsel appointed for him later. They told the defendant in no uncertain terms that they would not question him until he was provided with counsel. Manning's statement within minutes that he didn't need a lawyer was volunteered by Manning; he was not responding to police questioning at that time.
The facts recited above support the conclusion that defendant understood his Miranda rights and that his decision to waive right to counsel during interrogation and make a statement resulted from Manning's belief that he could convince the police of his innocence. There is no indication of an overpowering of defendant's will by the police officers. When Manning invoked his Miranda rights at 5:03 a. m., he saw the meaning of those rightsthe officers immediately stopped questioning him, and the officers told him that they could not question *51 him until an attorney was present. The fact that the police honored defendant's right to cut off questioning indicated to Manning that the promise of an attorney was not illusory.[3]
We conclude that defendant's Miranda rights were not violated by the Monroe police officers at 5:03 a. m. on August 9, 1977, nor at any time thereafter. The officers gave defendant fresh Miranda warnings before beginning each new round of questioning.
Defendant contends that Miranda warnings notwithstanding, his confession must be suppressed because it was not made freely and voluntarily. Before a confession may be introduced into evidence the state must show that the confession was made freely and voluntarily and that it was not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. R.S. 15:451, See Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 297 (1936). Although Manning made no allegation at the preliminary examination or at the motion to suppress hearing that he had been physically abused, at trial he alleged that he had been choked by a policeman. The court obviously did not believe him, and defendant has abandoned this contention on appeal. The thrust of his argument now is that the police used psychological coercion to exploit the defendant's low intelligence level and high degree of susceptibility to suggestion to force the defendant into making a confession which was not the product of his own free will.
In support of this contention defendant points to certain untrustworthy information in the confessions and alleges that the police suggested the contents of his confessions and induced his first confession by promising him that he could go home, for football practice, if he confessed. Defendant argues that the police successfully conditioned him into saying what they wanted him to say by "rewarding" him for cooperating with them by making statements.
The circumstances of the questioning do not suggest that defendant's will was overpowered psychologically or otherwise. After an initial four hours in police custody, Manning was taken home and asked to return to the police station at 8:00 a. m. At this point Manning was no longer detained and returned voluntarily to the station accompanied by his mother. Manning took a lie-detector test in which he admitted to having sex with his neighbor but denied that he had raped her. Upon conclusion of the test at 10:00 a. m. he was once again allowed to return home. At 12:30 p. m., when an officer asked defendant to return to the police station, Manning went with the officer because he understood that he would be allowed to return home. Shortly after this questioning session began Manning confessed to raping his neighbor, followed by his confession to the murder-rape of Vonda Harris.
The first confessions occurred after 7 or 8 hours of police custody interrupted by two significant breaks (totalling 4-4½ hours) when defendant was in his home environment and free to consult with family and friends. From the time Manning was first questioned to the time he confessed to the Vonda Harris rape-murder he received no less than nine Miranda warnings. Although Miranda warnings do not establish voluntariness of a confession if police conduct shows that Miranda rights will in fact be disregarded, in the present case defendant knew from his experience at 5:03 a. m. August 9th that he could stop *52 questioning at any time by invoking his Miranda rights. The record indicates that Manning was allowed to return home after making statements at 5:08 a. m. and 9:51 a. m. for practical rather than psychological reasonsstatements made at those times were exculpatory.
The inconclusive testimony of defendant's expert witnesses failed to corroborate defendant's allegation that the confessions were involuntary and their contents suggested by the police. One of the defense psychiatrists labeled the defendant a "passive-aggressive" type of individual who would make up answers rather than admit ignorance; the other defense psychiatrist denied that Manning was "passive-aggressive." One psychiatrist stated that Manning believed he would be allowed to go home to football practice if he confessed to the murder, while the other psychiatrist did not believe that Manning thought he could go home if he confessed.
Defense contentions that untrustworthy information contained in defendant's confessions casts doubt on the voluntariness of the confessions is not convincing. Defendant relies primarily on the fact that Manning implicated three black males from Monroe who in fact did not participate in the murder of Vonda Harris as evidence that the confessions were involuntary. Manning admitted to a police officer the morning after implicating the three alleged accomplices that he "had lied on the three dudes." The court obviously believed that the untrustworthy portions of the confessions resulted from the defendant's fabrications.
Conclusions of a trial judge on the credibility and weight of testimony relating to the voluntariness of a confession are given great weight and will not be overturned unless they are not supported by the evidence. State v. Simmons, 340 So.2d 1357 (La.1976). An examination of the trial record shows that the trial court's decision on the voluntariness of the confession is amply supported by the evidence.
The third argument advanced by defendant to suppress the defendant's confessions is that the trial court did not for the record articulate the burden of proof that the state must meet in proving that a confession was made freely and voluntarily. This assignment is without merit; the record contains no indication that the court in fact used any standard other than proof of voluntariness beyond a reasonable doubt. State v. Coleman, 369 So.2d 1286 (La.1979); State v. Volk, 369 So.2d 128 (La.1979).
In brief the defendant urges us to follow the New Hampshire Court in State v. Gullick, ___ N.H. ___, 396 A.2d 554 (N.H.1979), and require the trial court to make an explicit finding in the record that a confession was voluntary beyond any reasonable doubt. While defendant's argument is not frivolous and trial judges might do well to state for the record the standard of proof which governs their rulings in such situations we are not disposed to conclude that the absence thereof adversely affects the ruling.
Defendant's other assignment of error deals with allegedly exculpatory information withheld from the defense. The defense contends that the following material evidence should have been disclosed to the defendant:
(1) The fact that the defendant confessed to two rapes (in addition to the rapes of Vonda Harris and the neighbor) which the defendant may not have committed.
(2) A September 10, 1976 receipt from a Monroe auto-shredder which the defense contends would prove that the car which defendant in the confession had acknowledged was being used by him on the night of the Vonda Harris rape-murder was in fact destroyed five months prior to the night of Vonda Harris' death.
Upon request by the defense the state has a constitutional duty to disclose evidence material to the guilt or punishment of the accused. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); State v. Falkins, 356 So.2d 415 (La.1976). Pretermitting whether the evidence here should *53 have been disclosed by the state before trial,[4] the second question which must be answered affirmatively before a reversal of a conviction is required, is whether the nondisclosure deprived defendant of a fair trial. State v. Falkins, 356 So.2d at 417. Error of constitutional dimensions is committed only if the omitted evidence creates a reasonable doubt that did not otherwise exist. See United States v. Agurs, supra. The omitted material must be evaluated in the context of the record as a whole. Where there is no reasonable doubt as to guilt even when the additional evidence is considered, a new trial is not required. If some doubt as to the validity of the judgment already exists, additional evidence of relatively minor importance might create a reasonable doubt. United States v. Agurs, 427 U.S. at 113, 96 S.Ct. at 2402.
Defendant contends that the withheld evidence that on August 9th and 10th Manning confessed to additional rapes which he may not have committed would create a reasonable doubt that he was guilty of raping and murdering Vonda Harris. Defendant's argument is without merit. When the omitted material is evaluated in the context of the record as a whole, the additional evidence does not create a reasonable doubt.
The other evidence withheld by the prosecution, the receipt for the shredding of a black Impala on September 10, 1976, was specifically requested by the defendant to prove that the black Chevrolet owned by Morris Perkins that Manning in his confession had stated he was riding in on the night of the rape-murder of Vonda Harris had been junked by Perkins five months before the crime, on September 17, 1976.[5] (the date of the crime was February 21, 1977)
The defendant introduced into evidence the middle copy of an Auto-Shred receipt for an automobile junked on September 17, 1976. This copy of the receipt did not have the color, registration number or make of the car written on it. When the defense called an employee of Auto-Shred as a witness, the employee matched defendant's receipt with the receipts in her file and discovered that defendant's receipt apparently was for a white Chevrolet.
Defendant then called a witness (at trial) who initially testified that he and his cousin had junked a car for Morris Perkins in September of 1976. But on cross-examination the witness stated that he did not remember the date the car was taken to the auto-shredder. Defense counsel called an employee of the District Attorney's office who testified at trial that after the earlier hearing on the motion to suppress he had gone to the Auto-Shred and picked up two receipts in addition to the September 17, 1976 receipt, one of the former of which indicated that a black Chevrolet Impala had been junked on September 10, 1976. In an effort to link the receipt of September 10, 1976 with defendant's argument that Perkins' car had been junked in September, 1976 defendant called Ronald Ross who testified that he and his cousin had junked Morris Perkins' black Chevrolet in September of 1976, but defense counsel did not ask Ross to identify the September 10, 1976 receipt. When cross-examined Mr. Ross could not remember the exact date the car was junked.
The record indicates that the September 10, 1976 receipt for a black Chevrolet Impala was never positively identified as the receipt for Morris Perkins' car, but the jury could have drawn that inference from the evidence presented, and in fact that September 10, 1976 receipt which the District Attorney should have furnished earlier on defendant's request was presented at trial and introduced into evidence for the jury's consideration. Thus, we are not faced with the typical Brady issue of what effect omitted evidence would have had on a jury, because the requested evidence, the September 10, 1976 receipt for a black Chevrolet Impala, did reach the jury. We need *54 not decide whether evidence of the September 10, 1976 receipt would have created a reasonable doubt when evaluated in the context of the record as a whole, for the jury considered the September 10, 1976 receipt together with the other evidence and found defendant guilty beyond a reasonable doubt. There is no indication that the lateness of the disclosure prejudiced defendant so that he was prevented from receiving his constitutional right to a fair trial. United States v. Miller, 529 F.2d 1125 (9 Cir. 1976).
This assignment of error has no merit.

Decree
For the foregoing reasons the conviction and sentence of defendant Gerald Manning is affirmed.
AFFIRMED.
NOTES
[*] Chief Judge PAUL B. LANDRY, Retired, sat by assignment as Associate Justice Ad Hoc in place of former Justice ALBERT TATE, Jr., now Judge, United States Court of Appeals, Fifth Circuit, upon this case.
[1] Conviction for rape of defendant's neighbor is the subject of the appeal in State v. Manning, La., 380 So.2d 54, handed down this date.
[2] The police may ascertain whether the defendant's true intention is to exercise his right to silence and right to counsel. United States v. Rodrigues-Gastelum, 569 F.2d 482 (9 Cir. 1978). And several federal courts have held that a defendant may be confronted with evidence against him so long as no "interrogation" occurs. United States v. Hodge, 487 F.2d 945 (5 Cir. 1973); United States v. Davis, 527 F.2d 1110 (9 Cir. 1975). But see Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 431 (1977).
[3] The defendant urges us to adopt the reasoning of the Pennsylvania court in Commonwealth v. Johnson, 399 A.2d 111 (Pa. 1979), where the court found that a suspect had not knowingly and intelligently waived his rights after being given a Miranda warning which told defendant that the police had no way of providing defendants a lawyer immediately, but a lawyer would be appointed if and when the defendant went to trial. Without passing on the merit of the Pennsylvania decision, we note two distinctions in the present case. (1) The Miranda warning in the Pennsylvania case did not make it clear to defendants that they could have an attorney present during questioning prior to trial, and (2) in the Pennsylvania case the officers did not explain to the defendant that he could not be questioned until an attorney was present.
[4] While defense counsel perhaps did not know before trial the names of the other women defendant had confessed to raping, at the preliminary examination he had learned from a policeman who questioned defendant that Manning had confessed to several other rapes.
[5] In United States v. Agurs, 96 S.Ct. at 2399, the court stated that a prosecutor who receives a specific and relevant request should furnish the information to the defense or submit the issue to the trial court.