LOBRANO, Judge.
Appellant, Ferdinand Mathieu and his co-defendant, Lionel Sorina, were indicted by a grand jury for the March 13, 1981 first degree murders of Michael Gebbard and Daniel Hemple. Prior to trial the charges against Mathieu were reduced to two counts of second degree murder.
On June 16, 1983, appellant was tried and convicted on both counts by the unanimous vote of a twelve person jury. He was subsequently sentenced to life at hard labor, without benefit of probation, parole or suspension of sentence.
FACTS:
On March 13, 1981, homicide officer Kirk Littlier and his partner were summoned to the St. Bernard Housing Project in the 4000 block of Jumonville St. Upon their arrival they found the bodies of two white males seated upright in the front seat of a small .compact car. Both men had been shot in the head. A cigarette case, flashlight, ear protectors and a yellow rain suit were found outside the car.
Dr. Monroe Samuels from the Orleans Coroner’s office testified that the driver, Michael Gebbard, died from a gunshot wound to the left side of his head. Daniel Hemple, the passenger, received a gunshot wound of the face which fractured his jaw, passed through the carotid artery and continued through the left shoulder. A bullet was recovered from Hemple’s arm. The body displayed powder burns which indicated the gun was within several feet when fired. There was also a superficial gunshot wound on Hemple’s right thigh, having all the characteristics of an entrance wound, but no bullet was found.
The toxicologist testified that crime lab blood samples from both victims did not reveal the presence of drugs or alkaloids in *1089 either. Michael Gebbard had a blood alcohol level of 0.08 percent and Daniel Hemple one of 0.09 percent.
In addition to the bullet recovered from Hemple’s body, a copper jacket from a .44 caliber bullet was found on the floor board of the passenger side. The bullet from Hemple’s body was a .38 caliber bullet. Neither was fired from the .357 Magnum revolver identified as belonging to Michael Gebbard. A receipt for a .44 Magnum revolver was found in Daniel Hemple’s effects but the gun was never recovered.
Joseph Rauso, Gebbard’s brother-in-law, testified that Gebbard lived with him and that Daniel Hemple was visiting them for Mardi Gras. On March 12, 1981, both left the house between 10:30 and 11:00 p.m. stating they were going to a bar. At approximately 2:30 a.m. the next morning, Rauso stated he was awakened by loud music. He found Gebbard and Hemple in the living room with a stranger sitting at the bar. Rauso identified the stranger as appellant, Ferdinand Mathieu. Rauso ordered the men to leave the house. He observed Gebbard fiddling with something behind his back which he assumed was his gun. The men left saying the stranger was going to fix them up with some women.
On August 4th and August 11th, 1981, as well as at trial appellant offered several versions of what occurred. On August 4th, appellant stated he met the victims at Jasper’s Restaurant where he worked as an oyster opener. They asked him where they could get some action and he told them he knew. Appellant left with both men and brought them to the St. Bernard Housing project, where he told them to wait. Appellant then went to a bar and met Lionel Sorina, whom he thought had a sister who could provide service. He and Sorina returned to the car. At that point, Sorina drew a gun, shot the driver in the head point blank and ran around the car and shot the other man. Sorina then rifled their pockets, and appellant took their guns and some jewelry, wrapped them in a T-shirt and took them home.
On August 11th, in another version, appellant stated that when they arrived at the housing project, he pointed out a liquor store where the victims might be able to trade their narcotics for women. He then left the car. The next day, he went to his girlfriend Trena’s house, and while there, her brother, Lionel Sorina, told how he had lured the two men to the project with the intention of robbing them and had killed them.
During his trial, appellant testified that after going to the housing project, they stopped at Bill’s Pool Hall. He got out to see if there were some ladies there. Lionel Sorina was outside the pool hall and asked whether he was with the police. Appellant told him that they were his friends looking for women. Sorina answered, “You know I have the women” and asked to be introduced. The two went to the car and appellant said he stayed there because he did not want to leave the two white guys with someone with Sorina’s capabilities. He and Sorina then went back to the pool hall and picked up a lady. The three got in the car, then the girl got out and went to look for a girlfriend. After a short while, appellant went to check on the lady and when he got to the front of the car he heard two shots. He ran back to the car to see Lionel jumping out of the car with a gun. Lionel gave him the guns and told him to take them home.
ERRORS PATENT AND SUFFICIENCY OF EVIDENCE
In accordance with La.C.Cr.Pro. Art. 920(2) and State v. Raymo, 419 So.2d 858 (La.1982), this case has been reviewed for errors patent and for sufficiency of evidence.
We find there are no errors patent.
Appellant was convicted of two counts of second degree murder in violation of La. R.S. 14:3o.!.[1]
*1090 A careful review of the record shows that any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found in this case that the essential elements of the crime of second degree murder were proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La.1982).
The evidence presented at trial was sufficient for the jury to have found appellant guilty of the crimes charged. Both statements made by appellant put him at the scene of the crime up to the moment of the shootings. In the August 11, 1981 statement, as recounted by Detective Curóle, appellant said that Sorina suggested the victims be brought into the project and robbed and that he, appellant, concurred in the plan. He denied actively participating in the shootings stating that Sorina shot both victims but admitted receiving the stolen weapons. The statements, along with the physical evidence presented at the trial were sufficient for the jury to conclude that not only was appellant present at the time of the murders but actively participated in the shootings. The evidence demonstrates that Michael Gebbard, the driver was shot in the left side of his head and Daniel Hemple, the passenger was shot in the face. The evidence also showed the victims were shot with different weapons. Given these facts, the jury had sufficient evidence to conclude that the defendant was guilty of second degree murder beyond a reasonable doubt.
ASSIGNMENTS OF ERROR:
Appellant asserts three assignments of error:
(1) The trial court erred in allowing the state to introduce inculpatory statements made by appellant as these statements failed to adhere to the guidelines established for the free and voluntariness of damaging statements.
(2) The trial court erred in allowing the introduction of photographs of the victims which had no probative value and were highly prejudicial and inflammatory.
(3) The trial court erred in denying appellant’s Motion for Post Verdict Judgment of Acquittal and/or Modification of Verdict under La.C.Cr.Pro. Art. 821.
ASSIGNMENT OF ERROR NO. 1
Appellant maintains that the trial court failed to adhere to jurisprudential guidelines in admitting evidence of oral statements made by him.
The jurisprudence is clear that the state must prove affirmatively and beyond a reasonable doubt that the statements were free and voluntary and not made under the influence of fear, duress, menaces, threats, inducements or promises before they can be introduced into evidence. State v. Vernon, 385 So.2d 200 (La.1980); State v. Bell, 395 So.2d 805 (La.1981); State v. Tucker, 332 So.2d 797 (La.1976). General disclaimers that no undue influence was brought to bear upon the defendant is not enough. A defendant’s specific allegations must be specifically rebutted. State v. Dison, 396 So.2d 1254 (La.1981).
Appellant made two oral inculpatory statements to police officers, one on August 4, 1981 and one on August 11, 1981.
The August 4, 1981 statement was made when appellant surrendered himself to police at the urging of his former attorney, Arthur Dumaine.
Appellant testified that approximately two hours after he surrendered to police, his attorney visited him and directed that he not answer any questions. After his attorney left he stated the detectives sat *1091 him in a chair and told him that if he told them what had happened that he would get a lighter sentence, and if not, he would get the electric chair. He said the detective continued questioning him even though he kept reminding them that he was not to answer any questions. Finally, he said it got to a point where he had no choice.
Appellant’s testimony was rebutted by both investigating officers. Detective James Curóle testified that Dumaine instructed him not to question appellant and then departed. Curóle further stated that during the booking procedure, appellant began asking questions about what would happen to him if he told what he knew and indicated he wanted to make a statement. Curóle attempted unsuccessfully to contact Dumaine. He then proceeded to take the statements. Detective Cyril Davillier corroborated the testimony of Detective Cu-róle adding that appellant did not want to make a typed or taped statement but just wanted to tell them what happened.
All attorney Dumaine remembered about August 4th was that he was called to the police station in connection with appellant’s surrender but could not recall other details.
Arthur Dumaine testified that to the best of his recollection the August 11, 1981 meeting was initiated by Assistant District Attorney David Paddison to discuss a reduced charge for appellant in exchange for testimony against Lionel Sorina. He recalled that the subject of appellant’s execution was mentioned during the meeting by either Paddison or the detectives but could not recall if he objected to it.
Detective Curóle testified that the meeting on August 11, 1981 was initiated by appellant who sent word through prison officials that he wanted to make a statement and wanted his attorney and a district attorney present.
Assistant District Attorney David Paddi-son testified that he did not promise appellant a reduction of the charge. He told him he would consider a plea of manslaughter only if he agreed to tell the absolute truth and would testify against Sorina.
Nothing in Miranda[2] prevents an accused party from changing his mind and giving a statement after he has previously declined to do so, so long as the statement is voluntarily and intelligently made and his right to cut off questioning at any point is “scrupulously honored” by the authorities. State v. Daniel, 378 So.2d 1361 (La.1979); State v. Shea, 421 So.2d 200 (La.1982) and State v. Manning, 380 So.2d 46 (La.1980).
Even after having expressed his desire to deal with the police only through counsel, an accused may subsequently waive that right. Such statements are admissible and deemed voluntary where the accused himself initiates further communication, exchanges or conversations with police. State v. Willie, 410 So.2d 1019 (La. 1982). Likewise, such statements made upon the initiation of the accused are admissible even after defense counsel had advised the accused to remain silent. State v. West, 408 So.2d 1114 (La.1982).
At the conclusion of the Motion to Suppress hearing, the trial court denied the Motion to Suppress evidently disbelieving the version presented by the defense. When the issue is credibility of witnesses, a trial judge’s determination will not be disturbed unless clearly contrary to the law and the evidence. State v. Bell, supra, State v. Dison, supra.
We find no manifest error on the part of the trial judge’s conclusion. This assignment of error is without merit. The oral statements of appellant were properly admitted.
ASSIGNMENT OF ERROR NO. 2
The two photographs objected to were close-ups of the victims, showing the bullet wounds. Appellant asserts that these photographs were highly prejudicial and inflammatory and had no probative value. The photographs in question are *1092 unpleasant and brutal. Nevertheless, the admission of gruesome photographs of a crime will not be overturned unless it is clear that that prejudicial effect of the photographs outweighs their probative value. State v. Brogdon, 426 So.2d 158 (La.1983); State v. Perry, 420 So.2d 139 (La.1982). Photographs which illustrate any fact, shed light upon fact or issue in the case, or are relevant to describe the person, place or thing depicted are generally admissible. State v. Kirkpatrick, 443 So.2d 546 (La.1983).
In the instant case, the photographs graphically illustrate the site of the bullet wounds and are relevant in analyzing appellant’s several versions of how the shootings took place. They serve this purpose with greater accuracy than the oral descriptions of the coroner. On that basis alone, the probative value of the photographs outweigh any possible inflammatory effect. This assignment of error is without merit. The photographs were properly admitted into evidence.
ASSIGNMENT OF ERROR NO. 3
By this assignment appellant complains of the denial of his motion for acquittal or modification of the verdict.
The verdict rendered was amply supported by the evidence as previously discussed in our review for errors patent and sufficiency of evidence. This assignment of error is without merit.
For the foregoing reasons, appellant’s conviction and sentence are affirmed.
AFFIRMED.

. R.S. 14:30.1 is defined as:
Second degree murder is the killing of a human being:
*1090 (1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).