J2KUHN, Judge.
The defendant, Alfred Wesley, III, was originally charged by grand jury indictment with first degree murder, in violation of La. R.S. 14:30. Subsequently, the charge was *773 amended to second degree murder, a violation of La. R.S. 14:3o.!.[1] He pled not guilty and, after trial by jury, was found guilty as charged. The defendant received the mandatory sentence of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.[2] He has appealed, alleging as his only assignment of error that the trial court erred in denying the motion to suppress the confession.

FACTS

On the night of September 29, 1993, the defendant robbed and killed the victim, Willie Mack Augman, at the victim’s residence in Patterson, Louisiana. The body was discovered by a neighbor the following morning. Suspicion quickly focused upon the defendant when it was learned that he had sold, or attempted to sell, a television set on the night of the murder. After his arrest, the defendant gave a taped statement in which he initially denied participation in the murder. However, in a second taped statement, the defendant eventually gave a full confession wherein he admitted he had killed the victim. The defendant explained he was under the influence of cocaine at the time of the murder and he killed the victim in order to get money to buy more drugs. After the murder, he took | 3 two television sets, a watch, and two stereo speakers. He sold one television set to his sister, Debra Elliott, and her husband, Roger Elliott, for $10. The defendant sold another television set to Ronald Barrow for $10. After the confession, the defendant assisted the police in recovering the watch he had taken from the victim after the murder.

ASSIGNMENT OF ERROR:

In his only assignment of error, the defendant contends that the trial court erred in denying his motion to suppress his confession. Specifically, the defendant contends that, because he expressed a desire to speak with an attorney during the first taped statement, his subsequent interrogation rendered his confession in the second taped statement inadmissible under Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).
At the motion to suppress hearing, the transcripts of both taped statements were introduced into evidence. At the conclusion of the hearing, the trial court examined the transcripts and ruled that the confession was admissible at the trial because the defendant’s request for an attorney “was not clear an (sic) unambiguous and unequivocal....” For the reasons which follow, we find no error in the trial court’s ruling denying the motion to suppress.
The defendant was advised of his Miranda [3] rights a total of three times. Ray Brennan, a former Patterson police officer, testified at the motion to suppress hearing that he advised the defendant of his Miranda rights using a standard rights waiver form. Brennan identified State Exhibit 1, a rights waiver form signed by the defendant. This form was executed at 12:32 p.m. on September 30,1993, at the police station.
At the beginning of the first taped statement, the defendant was advised of his Miranda rights a second time by Assistant Chief Patrick LaSalle of the Patterson Police UDepartment. State Exhibit 2, another *774 rights waiver form signed by the defendant, also was signed by Asst. Chief LaSalle and witnessed by Detective Frank Mula of the St. Mary Parish Sheriffs Office. Both Asst. Chief LaSalle and Det. Mula identified State Exhibit 2. This form was executed at 1:22 p.m. on September 30,1993.
During the first taped statement, the following colloquy occurred between Asst. Chief LaSalle, Det. Mula, and the defendant:
DEFENDANT. Okay now. Can I get me a lawyer before I can talk? Like the man said on that thing right there?
Q. (By Mula) If you say — If you say you want a lawyer, we stop right here.
(By LaSalle) We will stop right now.
(By Mula) If you tell us that is it, that is it, we are out of here.
(By LaSalle) We are out of here.
(By Mula) But that don’t mean you are.
(By LaSalle) There is no coming back. I am not going to want to talk.
(By Mula) If you want to talk to us, we are going to talk to you. If you don’t want to talk to us, just tell us, “I don’t want to talk no more.”; and that is it, I am finished. Okay? That is up to you.
(By LaSalle) Tell me right now.
Defendant. I mean what we talking about, man. I mean, man, put it like — Y’all want me to put it plain, man.
Q. (By Mula) We just want you to tell us the truth. We just you to tell us the truth.
(By LaSalle) We just want you to tell us the truth. I mean you tell me right now, we are going to stop; and then we are going to proceed our way. And we are going to go—
Defendant. I met with y’all—
Q. Well, wait, Alfred. We are going to proceed our way and we are going to go all the way. There won’t be no stopping. Come on.
ls(R 148-149).
Later during this statement, the officers kept trying to determine whether or not the defendant wanted an attorney, but the defendant kept talking, as reflected in the following colloquy:
Q. (By LaSalle) Okay Alfred, let’s get back at it again.
(By Mula) Have you decided — Have you decided that you want to talk to us or not? I mean you make that decision; but whatever your decision is, say out loud so the tape can hear you. The tape can’t see you shaking your head “no” or “yes”. It is not a camera. You want to talk to us, Alfred?
A. Okay. This is how it was, man_
(R 152).
The defendant further responded by discussing his contact with the decedent on the previous evening.
At the beginning of the second taped statement, the defendant was advised of his Miranda rights for the third time by Asst. Chief LaSalle. State Exhibit 3, another rights waiver form signed by the defendant, also was signed by Asst. Chief LaSalle and witnessed by Det. Mula. Both Asst. Chief LaSalle and Det. Mula identified State Exhibit 3. This form was executed at 9:30 p.m. on September 30, 1993. After the defendant signed this rights waiver form, the following colloquy occurred between Asst. Chief La-Salle and the defendant:
Q. Let the record reflect that Mr. Wesley has signed his rights form and waiver of rights.
Alfred, did you ask to talk to us? Do you want to talk to us?
A. Yes, sir.
(R 640).
| thereafter, during this second taped statement, the defendant eventually confessed to the murder. The defendant made no reference to an attorney during this second taped statement.
In Davis v. United States, 512 U.S. 452, 461, 114 S.Ct. 2350, 2356, 129 L.Ed.2d 362 (1994), the Supreme Court held that “after a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney.” The Supreme Court noted that, while it often would be “good police practice” for the investigating officers to ask clarifying questions when *775 a suspect makes an ambiguous or equivocal statement regarding counsel, the decision stops short of a rule requiring officers to ask clarifying questions. “If the suspect’s statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him.” Davis v. United States, 512 U.S. at 461-62, 114 S.Ct. at 2356.
In State v. Manning, 380 So.2d 46 (La.1980), the Louisiana Supreme Court also noted that the police may ask questions in order to “ascertain whether the defendant’s true intention is to exercise his right to silence and right to counsel. [Citation omitted]. And several federal courts have held that a defendant may be confronted with evidence against him so long as no ‘interrogation’ occurs.” 380 So.2d at 50 n. 2.
In the instant case, the record establishes a knowing and voluntary waiver of Miranda rights by the defendant prior to each of his statements. The record also establishes the officers clearly tried to ascertain whether or not the defendant wished to cease the interrogation and consult with an attorney, but the defendant kept talking with the officers.
[ 7After considering the entire record,[4] we find no abuse of discretion in the trial court’s determination that the defendant did not make an unambiguous request for an attorney during the first taped statement. Accordingly, both the first taped statement, and the second taped statement (which contained the defendant’s confession), were properly admitted at the trial.
This assignment of error has no merit.
CONVICTION AFFIRMED. SENTENCE AFFIRMED AS AMENDED, AND REMANDED WITH ORDER.

. We note a patent error. The court minutes do not indicate that the defendant was re-arraigned after the charge was amended to second degree murder. Nevertheless, the defendant does not allege, nor do we find, any prejudice. In any event, failure to re-arraign the defendant was waived, since he did not object before trial. La. Code Crim. P. art. 555; State v. Delatte, 504 So.2d 1067, 1068 n. 1 (La.App. 1st Cir.1987).

. We note the following patent sentencing error. The instant record does not contain a sentencing transcript. Neither the minutes nor the commitment show that the trial court, in imposing this sentence, gave the defendant credit for time spent in actual custody prior to sentencing. Such an allowance of credit is mandatory. La. Code Crim. P. art. 880. Accordingly, we find patent sentencing error and amend the sentence to reflect that the defendant is to be given credit for time served prior to the execution of his sentence. See State v. King, 604 So.2d 661, 670 (La.App. 1st Cir.1992). Re-sentencing is not required; however, we remand this case and order the district court to amend the commitment and minute entry of the sentence to reflect that the defendant is to be given credit for time served.

.Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. In determining whether or not the ruling on the defendant’s motion to suppress was correct, an appellate court is not limited to the evidence adduced at the hearing on that motion. Instead, this Court also may consider all pertinent evidence given at the trial of the case. State v. Merchant, 490 So.2d 336, 339 n. 2 (La.App. 1st Cir.), writ denied, 496 So.2d 326 (La.1986).